**STATE ex rel., Ann L. O'BRIEN, Petitioner,**

v.

**Edward MORELAND, Director of St. Louis County Department of Justice Services, Respondent.**

No. 49409.

Missouri Court of Appeals, Eastern District, Division Two.

Jan. 21, 1986.

Mark Belz, Clayton, for petitioner.

Rosen, Blum, Goldenhersh, Silverstein & Safft, Clayton, for respondent.

ORIGINAL PROCEEDING FOR WRIT
OF HABEAS CORPUS

SIMON, Presiding Judge.

In a petition for habeas corpus, petitioner, Ann L. O'Brien, attacks the lawfulness of her detention by the Director of St. Louis County Department of Justice Services. Petitioner was found guilty of indirect criminal contempt and sentenced to three months confinement in the St. Louis County Department of Justice Services and a $500.00 fine for her activities at the Roitman and Palmer Women's Clinical Group Inc.'s (Clinic) offices. Petitioner alleges that the trial court erred in overruling her motion for a directed verdict of acquittal and judgment of acquittal in that there was no substantial evidence to support the trial court's findings. More specifically, petitioner alleges that: (1) she was not a named defendant nor one acting in concert with the named defendants in the injunction; (2) she did not have prior notice of the temporary injunction; and (3) there was no evidence that petitioner interfered with a patient's ingress and egress to Clinic's premises. Petitioner also challenges the trial court's judgment and commitment order because it did not state the specific acts which constitute petitioner's indirect criminal contempt. Finally, the petitioner alleges that the trial court erred by denying her motion to quash the show cause order because that order failed to allege petitioner was a defendant in the injunction suit or acting in concert with the defendants at the time of the alleged violation. A brief rendition of the pertinent facts follow.

On August 23, 1983 Clinic brought suit in St. Louis County Circuit Court seeking an injunction and damages against "Ann O'Brien ... John Doe & Mary Roe, et al., the names of whom are unknown to plaintiff individually and as representatives and agents of a class, said class being members of People Expressing A Concern for Everyone (PEACE)." On June 27, 1984 Clinic filed an amended petition naming additional defendants, but omitting Ann O'Brien, petitioner, as a named defendant. The petition again named John Doe and Mary Roe, et al.

On August 3, 1984, defendants filed an answer. On September 11, 1984 the trial court issued a temporary restraining order. On October 1, 1984, following the presentation of evidence, the trial court issued a temporary injunction preventing all defendants and persons acting in concert from:

> "trespassing inside the premises known as 3394 McKelvey Road and enjoins them from obstructing, barricading, or interfering with ingress to and egress from plaintiff's suite known as Suite 111 and the building at 3394 McKelvey Rd."

The order was read in open court and copies were posted on an outside door of the office building at 3394 McKelvey and on the exterior door of Clinic's office suite. A prior, less restrictive injunctive order, not involved here, had been posted in that same location at an earlier date.

On November 8, 1984 petitioner was observed in Clinic's office suite and waiting room. She was subsequently arrested in Clinic's parking lot and charged with indirect criminal contempt for violating the October 1 order. On November 19, 1984 petitioner was served with an order to appear on November 26 and to show cause why she should not be found guilty of criminal contempt. At the hearing on the show cause order, Clinic's office manager, Mrs. Smythe, the only witness testifying, stated that she saw petitioner come through the office doorway into the waiting room from the building's common atrium shouting to a Clinic patient "not to kill her baby" and that "these people were murderers." She further testified that she asked petitioner to leave and told her she was not supposed to be in there. Petitioner was on the premises for about five minutes before she departed. Mrs. Smythe testified that she observed the police talking with petitioner as well as others whom she recognized as regular protestors in the parking lot. Upon examination she was unable to name the other protestors or to connect them with the PEACE organization. She also stated she did not know whether petitioner had been in the court room at the time the October 1 order was read.

Following the presentation of evidence, the trial court found that petitioner had actual knowledge of the terms and conditions of the temporary injunction by being present in court and that the order was prominently posted in two places. Further, the trial court found that petitioner wilfully violated that order on November 8 by entering the premises and interfering with the patient's ingress and thereafter refusing to leave the premises after being asked to do so. The court found beyond a reasonable doubt that petitioner's actions were wilful, deliberate violations of the order and that petitioner was guilty of indirect criminal contempt. Petitioner made motions for directed verdict and judgment notwithstanding the verdict at the close of the evidence and again in post trial motions which were denied. She was convicted of indirect criminal contempt and received a fine of $500.00 and sentenced to serve three months in St. Louis County Department of Justice. Taken into custody petitioner seeks a writ of habeas corpus. We issued our preliminary writ releasing petitioner on bond.

In order to sustain petitioner's conviction two findings beyond a reasonable doubt must be made—actual knowledge of the restraining order and conduct in violation of the order. *Mechanic v. Gruensfelder*, 461 S.W.2d 298, 310 (Mo.App.1970). The initial question to be addressed is whether petitioner had actual knowledge of the injunction. The trial court found that petitioner had actual knowledge of the terms and conditions of the temporary injunction by being present in court when same was read to defendant and additionally, the temporary injunction was prominently posted in two places.

Our review in a habeas corpus proceeding is limited to whether the trial court's findings are supported by the evidence beyond a reasonable doubt and whether petitioner acted as stated in the specific facts found. *Mechanic v. Gruensfelder*, 461 S.W.2d at 313. We accept all evidence and favorable inferences which may reasonably be drawn therefrom in a light most favorable to the trial court's findings. We do not reweigh the evidence, but look to see if there is substantial evidentiary support for the court's findings. *State ex rel. Girard v. Percich*, 557 S.W.2d 25, 37 (Mo.App.1977). The general rule is that one who violates an injunction is guilty of contempt, although not a party to the injunction suit, if he has notice or knowledge of the injunction order and is within the class of persons whose conduct is intended to be restrained, or acts in concert with such a person. *Mechanic*, 461 S.W.2d at 306, *citing, Walker v. City of Birmingham*, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967). Therefore, the threshold question is whether there is substantial evidence to support the finding that petitioner had actual knowledge of the injunctive order. Knowledge of the restraining order can be established by circumstantial evidence so long as it is consistent with a hypothesis of guilt and inconsistent with any reasonable hypothesis of innocence. *Mechanic*, 461 S.W.2d at 311.

The record indicates that the only prosecution witness in the contempt hearing was unable to recall whether petitioner was in the court room at the time the order was read. While it is not necessary for the prosecutor to establish that petitioner has read a copy of the order received by her or to establish that she listened to an order when read to a gathering of which she is a part, there must be some evidence in the record to put the petitioner into a place or position where existence of the order was called to her attention. *Mechanic*, 461 S.W.2d at 312. Here, the record indicates petitioner was not a named defendant who had received a copy of the court order, nor is there evidence to show that she was a part of the gathering in the court room to whom the order was read. Thus, the court's finding that petitioner had actual knowledge by being present in the court room at the time the order was read is without evidentiary support in the record.

The trial court also found that petitioner had actual notice because of the two prominently posted orders. Assuming that the

trial court was referring to copies of the October 1 injunctive order which were posted on the door of the building at 3394 McKelvey Road and on the door of the Clinic, the evidence must show that petitioner was made aware of the posted orders.

Our court considered the issue of notice in *Mechanic v. Gruensfelder.* In that case, after the court issued a temporary restraining order to prohibit certain specified acts involving ROTC protests on the Washington University campus, the chancellor of the university issued a statement which included reference to the order and a supplemental sheet describing verbatim the prohibited activities. Copies of this were distributed to all dormitory students' mailboxes, to mailboxes in all university departments, fraternities, and sororities, and to main buildings frequented by the students. Copies were also posted on three prominent campus bulletin boards. In addition, the statement was repeatedly carried by the student paper and the St. Louis media. The campus chief of security also read the pertinent parts of the order to groups on several occasions and several student groups and organizations discussed the order at meetings and gatherings. The trial court held three petitioners guilty of criminal contempt finding that they had actual knowledge of the order based on extensive publicity given to the order by the university and the daily press. *Mechanic,* 461 S.W.2d at 312. The facts showed that petitioners were neither dormitory nor campus residents nor were they identified as having attended gatherings at which the order was read or discussed. We set aside the convictions finding the evidence established only that these petitioners could or should have known of the existence of the order, not that they in fact knew of such. *Id.* at 312–13. "Mere presence in a community, or potential access to information [through posted notices, mass distributions to extensively used buildings or publications by local media], no matter how widespread the publicity, cannot be held to confer actual knowledge in absence of evidence showing

the matter was brought to the individual's attention." *Id.* at 312.

Here, there is no evidence showing that petitioner saw or was made aware of the order posted on the outside door of the building. As to the order posted on the door of Clinic's office suite, there remains a reasonable doubt as to whether petitioner was made aware of that order. The record shows that Mrs. Smythe, Clinic's manager, saw petitioner enter through the atrium and come into the Clinic's office suite with a patient of the Clinic. The witness testified that she asked petitioner to leave the premises at that time. When Smythe was asked whether she advised petitioner that petitioner was violating a court order, she responded, "yes, I told her she wasn't supposed to be there." There is no adequate showing that the existence of the October 1 court order was brought to petitioner's attention by these words. There is no evidence that the witness pointed to the posted order or referred to it so as to call attention to it. Further, Smythe testified that there had been a prior injunction, not involved here, granted by a different judge, posted in the same location. The prior injunction was not as prohibitive as the October 1 order. The witness also testified that at the time the October 1 order was read it was mentioned that it was alright to talk with proposed patients. Because the prior order was posted in the same place as the October 1 order, the mere posting of the October 1 order is not sufficient to show that it was brought to petitioner's attention. Thus, a reasonable doubt is created as to petitioner's knowledge of the October 1 order and the more stringent prohibitions in that order. This would also negate a finding of a knowing, wilful violation of the order.

Accordingly, the evidence does not support a finding that petitioner had actual knowledge of the injunctive order. Since this point is dispositive of the case, we need not reach other points raised. Our preliminary writ of habeas corpus is hereby made absolute, and the petitioner is discharged.

KELLY and GARY M. GAERTNER, JJ., concur.